IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES DOVENBERG,

           Plaintiff,

    v.

UNITED STATES OF AMERICA, by and through the UNITED STATES FOREST SERVICE; and STATE OF OREGON by and through the OREGON DEPARTMENT OF FORESTRY,

           Defendants.

No. CV 08-0889-MO

OPINION AND ORDER

**MOSMAN, J.,**

Plaintiff James Dovenberg brought suit against the United States, the U.S. Forest Service, the State of Oregon, and the Oregon Department of Forestry for property damage associated with fighting the Shake Table Complex Fire.[1] Mr. Dovenberg alleged negligence under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80. Defendants United States and U.S. Forest Service brought a Motion to Dismiss (#28) for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), now pending before the court. For the reasons stated below, I GRANT the Motion to Dismiss.

## BACKGROUND

In late August 2006, lightning ignited several wildfires in Malheur National Forest near

---

[1] The court previously dismissed the State of Oregon and the Oregon Department of Forestry from this lawsuit.

PAGE 1 - OPINION AND ORDER

John Day, Oregon. (Compl. (#1) ¶ 4.) The fires became known as the Shake Table Complex Fire. (*Id.*) The wildfires, which engulfed nearly 2000 acres in the first several days, were primarily confined to Forest Service land. (Pl.'s Resp. (#36) 3.) Federal and state agencies, including defendants, jointly ordered a Type I Incident Management Team ("IMT") to oversee suppression of the fire. (*Id.*) A Type I Incident Commander, the highest level of commander, led the IMT, and the Type I categorization reflected the "size and complexity of the fire." (*Id.*)

On August 28, 2006, the Shake Table Complex Fire crossed a ridge and entered the southern portion of Mr. Dovenberg's 800 acre property in Grant County, known as Widows Creek Ranch. (Compl. (#1) ¶ 3; Pl.'s Resp. (#36) 3-4.) In response to the fire's expansion onto Mr. Dovenberg's property, the IMT set up a staging area near the entrance to the Ranch. (Pl.'s Resp. (#36) 4.) The team also used roads on Mr. Dovenberg's property to access the fire and to construct a Safety Zone, Drop Points, and a Dozer Line. (*Id.*) His roads provided primary access to the fire and were used by up to 1500 firefighters and staff personnel during the four days when the fire remained out of control. (*Id.*; *see also* Compl. (#1) ¶ 6.) The IMT continued to use the Ranch to access the fire area for approximately two weeks following control of the fire. (Compl. (#1) ¶ 6; *see also* Pl.'s Resp. (#36) 4.) Mr. Dovenberg asserts that the team's use of the Ranch resulted in the destruction of roads, culverts and fencing, the clearing of areas for staging, the Safety Zone, Drop Points, and the Dozer Line. (Pl.'s Resp. (#36) 4; *see also* Compl. (#1) ¶ 6-7.) Mr. Dovenberg submitted a claim for damages to defendant United States on March 13, 2007, which was denied nearly a year later. (Compl. (#1) ¶ 9-10.)

Mr. Dovenberg filed the instant lawsuit on July 25, 2008. His complaint alleges that:

8. Defendants acted negligently in the following particulars:

>  a. In failing to properly supervise their employees, agents and representatives during the times they were on the Property;
>  b. In failing to properly instruct their employees, agents and representatives to avoid damaging the Property; and
>  c. In failing to protect the Property from the fire.

(*Id*. at ¶ 8.) The United States and the Forest Service subsequently filed this Motion to Dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). They assert application of the Federal Tort Claims Act's discretionary function exception under 28 U.S.C. § 2680(a).

## STANDARD OF REVIEW

The court must accept the factual allegations in the complaint as true when deciding a motion to dismiss under Rule 12(b)(1) based on the discretionary function exception. *Terbush v. United States*, 516 F.3d 1125, 1128 (9th Cir. 2008). The United States has the burden of proving that the discretionary function exception applies. *Id.*

## DISCUSSION

**I.    The Federal Tort Claims Act**

The Federal Tort Claims Act ("FTCA") waives the federal government's sovereign immunity for tort claims arising from the negligence of government employees acting within the scope of their employment. 28 U.S.C. § 2679(b)(1); *Terbush*, 516 F.3d at 1128. Accordingly, a plaintiff can sue the government "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

The FTCA's waiver of sovereign immunity includes certain exceptions, such as the discretionary function exception, which excepts:

> (a) Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This exception protects government actions and decisions based on social, economic, and political policy. *United States v. Gaubert*, 499 U.S. 315, 323 (1991). "In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 537 (1988).

*Berkovitz* set out a two-part test to determine whether the discretionary function exception applies to an agency action. First, the challenged government action must be discretionary, involving an element of choice or judgment. *Id.* at 536. This first part of the analysis examines the nature of the conduct at issue—the exception will not apply if a statute, regulation, or policy mandates a particular course of action, leaving no discretion. *Id.*; *see also Terbush*, 516 F.3d at 1129 ("When a specific course of action is not prescribed, however, an element of choice or judgment is likely involved in the decision or action.").

A court must next consider whether the governmental action or decision was based on "considerations of public policy." *Berkovitz*, 486 U.S. at 536-37; *Terbush*, 516 F.3d at 1129 (noting that public policy refers to "decisions 'grounded in social, economic, or political policy'"). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

II.     <u>Firefighting as a Discretionary Function</u>

The United States and the Forest Service bear the burden of proving that Mr. Dovenberg's

PAGE 4 - OPINION AND ORDER

claims are barred by the discretionary function exception to the FTCA, even when accepting the factual allegations of his Complaint as true and viewing them in his favor. A threshold issue in this case, however, is the determination of Mr. Dovenberg's claims.

### A. *Plaintiff's Claims Under the FTCA*

Plaintiff's Complaint (#1) presents a fairly straightforward tort claim for property damage caused by negligent firefighting and/or negligent supervision of firefighters during the course of the Shake Table Complex Fire. (*See* Compl. (#1) ¶ 8, Ex. 1 at 4.) Defendants filed their Motion to Dismiss based on these allegations. (Mem. in Supp. of Defs.' Mot. to Dismiss (#29) 2.) Subsequently, Mr. Dovenberg attempted either to add new claims not alleged in the Complaint, or to reframe the claims presented in the Complaint. In his Response to the Motion to Dismiss, Mr. Dovenberg now contends that

> [t]he claimed negligence is not about the efforts of the Defendant and the IMT in their approach to fighting and containing the fire but their failure and omission to properly supervise the personnel assigned to the IMT in performing and carrying out the requirements of the agreements [Land Use Agreement], plans [Shake Table Complex Suppression Rehabilitation Repair Plan] and guidelines [Rehabilitation Guidelines for the Shake Table Complex] that applied to the Shake Table Complex fire and the property of the Plaintiff.

(Pl.'s Resp. (#36) 5-6.)

Mr. Dovenberg further admits that he "does not challenge how the Defendant fought the fire. Certainly that involves judgment, discretion and choices." (*Id.* at 8.) Rather, he argues, repair and rehabilitation "documents do not fall within the discretionary function exception of the FTCA." (*Id.* at 8.) Mr. Dovenberg claims that certain "representations and commitments made by the government" regarding repair of his property were not adhered to as the government promised. (*Id.* at 8-9.) He notes, however, through the Declaration of Shaun Robertson, that the

PAGE 5 - OPINION AND ORDER

Shake Table Complex Suppression Rehabilitation Repair Plain might not have been approved by the necessary agencies or placed into effect. (*See id.* at 8; Robertson Decl. (#36) ¶ 7.)[2]

The new allegations raised for the first time in Mr. Dovenberg's Response provide insufficient notice to defendants as required by Federal Rule of Civil Procedure 8. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006). Given the notice of claim requirement in 28 U.S.C. § 2675 as well as plaintiff's failure to amend his Complaint to include additional claims or allegations, the basis for Mr. Dovenberg's lawsuit can fairly be stated as property damage caused by negligent firefighting and/or negligent supervision of firefighters during the course of the Shake Table Complex Fire. (*See* Compl. (#1) ¶ 8.) As described below, I find the government has adequately shown that the discretionary function exception bars Mr. Dovenberg's claims.

### B.     *Berkovitz's Two-Part Test*

*Berkovitz*'s two-part test requires the government to show that the challenged action was both (1) discretionary and (2) based on policy considerations. *See Berkovitz*, 486 U.S. at 536-37. The government meets this test as described below, and caselaw within the Ninth Circuit confirms that the Forest Service's firefighting decisions generally fall within the discretionary function exception of the FTCA.

---

[2] Mr. Dovenberg presents these documents for the first time in his Response to the Motion to Dismiss. The possibility exists that Mr. Dovenberg may have a plausible contract or promissory estoppel claim if the Forest Service entered into an agreement with him regarding repairs or made representations upon which Mr. Dovenberg detrimentally relied. Whether such a claim exists, and whether the government has immunity from that claim, is not a matter before me at this time.

1.   **Discretion**

The first part of the test inquires whether a federal statute, regulation, or policy specifically prescribed a particular course of action by the Forest Service in fighting the Shake Table Complex Fire. *See Miller v. United States*, 163 F.3d 591, 594 (9th Cir. 1998). In *Miller*, the Ninth Circuit recognized the discretionary function of the Forest Service in fighting a widespread fire. *Id.* at 595. Even when "standards and procedures outline certain requirements for fire suppression, they do not eliminate discretion because they do not tell firefighters how to fight the fire." *Id.* Here, plaintiff does not dispute that the Forest Service named a Type I Incident Commander to oversee a Type I Incident Management Team, giving him the authority, responsibility, and discretion to fight what eventually became a 14,000 acre fire based on his determined strategy and available tactics. (Mem. in Supp. of Defs.' Mot. to Dismiss (#29) 12-13; *see also* Snell Decl. (#32) Ex. 2 at 11 (Forest Service Manual), Ex. 3 at 17-22 (Fireline Handbook); Pl.'s Resp. (#36) 3.) The Forest Service manuals and guidelines did not prescribe a specific course of action, and the Incident Commander had discretion to exercise his own judgment in directing fire suppression efforts.

2.   **Policy Considerations**

The second part of the *Berkovitz* test examines whether the government based its action on considerations of public policy. In analyzing this factor, courts consider whether a decision is "grounded in social, economic, or political concerns." *Miller*, 163 F.3d at 595.  Here, defendants present the Wildland Fire Situation Analysis, among other things, prepared by the Forest Service, to which Mr. Dovenberg does not object. The Analysis outlines objectives for the Incident Commander to consider when formulating his strategy and supervising firefighters, including

PAGE 7 - OPINION AND ORDER

economic, environmental, social, and safety concerns. (Hunt Decl. (#30) Ex. 2 at 9-12.) Examples of specific objectives include: (1) Economic—"[m]inimize fire spread on private lands" and "[p]rotect timber values to the extent possible"; (2) Environmental—"[p]rotect water quality to the extent possible" and "[m]inimize or avoid stream course disturbance"; (3) Social—"[u]tilize local resources to the extent possible" and "[p]rotect known cultural sites"; (4) Safety—"[p]ublic safety is a high priority[,] [l]imit exposure to the public . . . ." (*Id.*) The Incident Commander, acting on behalf of the government, made his decisions based on public policy considerations and directed his team accordingly.

### 3.    **Applicable Caselaw**

In addition to the analysis above, defendants point to numerous cases that hold the discretionary function exception applies to the Forest Service in fighting wildfires. I recognize that I am not the first to analyze this issue, and both the Ninth Circuit and its lower courts have repeatedly applied the discretionary function exception to similar cases. *See Backfire 2000 v. United States*, No. 06-35970, 2008 WL 1741493 (9th Cir. April 14, 2008) (holding Forest Service's decision to set a backfire was within the discretionary function exception, based on cost, safety, and resource damage); *Miller*, 163 F.3d at 597 (holding discretionary function exception applied when fighting multiple fires, given consideration of economic and social policies); *Green v. United States*, Nos. CV 08-311-TUC-CKJ, CV 08-313-TUC-JMR, 2009 WL 886567, at *6 (D. Ariz. Mar. 31, 2009) (holding discretionary function exception applied when fighting forest fire because the Forest Service's actions required judgment, and were based on safety, human and economic costs, and availability of resources); *Parsons v. United States*, 811 F. Supp. 1411-12, 1421 (E.D. Cal. 1992) (holding discretionary function exception applied when

PAGE 8 - OPINION AND ORDER

Forest Service's firefighting efforts destroyed 500 acres of plaintiff's timber); *Pope & Talbot, Inc. v. Dep't of Agric.*, 782 F. Supp. 1460 (D. Or. 1991) (holding discretionary function exception covered Forest Service's refusal to close a national forest in response to a wildfire that spread to plaintiff's land and destroyed his timber); *Defrees v. United States ex rel. U.S. Forest Service*, 738 F. Supp. 380, 385 (D. Or. 1990) (holding discretionary function exception encompassed Forest Service's actions in fighting a fire that ultimately damaged plaintiff's private property).

## CONCLUSION

Plaintiff's Complaint alleges property damage caused by the Forest Service's negligence in fighting the Shake Table Complex Fire as well as its negligence in supervising firefighters and personnel during and following suppression of the fire. Plaintiff acknowledged the discretion necessarily involved in such firefighting, and presented no evidence showing that the Forest Service and its employees failed to base their decisions on public policy considerations. I find that the discretionary function exception applies in this case, depriving this court of subject matter jurisdiction. Therefore, I GRANT defendants' Motion to Dismiss and plaintiff's claims are dismissed with prejudice.

IT IS SO ORDERED.

DATED this __5th__ day of ____November____, 2009.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge